**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NO. 1:22-CR-00184-DLF |
| | : | |
| | : | |
| BARRY BENNET RAMEY | : | |

**MOTION TO REVOKE DETENTION ORDER**
**AND FOR PRETRIAL RELEASE**

Defendant Barry Ramey, by and through counsel, respectfully requests that this Court revoke the Magistrate Judge's detention order from Southern District of Florida and issue an order authorizing pretrial release with location monitoring and any other conditions deemed appropriate by the Court pursuant to 18 U.S.C. 3142 and 3145(b). Mr. Ramey is not a flight risk, he is not a danger to the community, and he can rebut the presumption of detention. GPS monitoring, along with other conditions of release that provide for strict supervision, will reasonably ensure Mr. Ramey's appearance at future court dates as well as safety of the community.

**BACKGROUND**

On April 20, 2022, the Government filed an indictment and criminal complaint against Mr. Ramey charging with him several allegations related to the protests at the Capitol on January 6, 2021. Mr. Ramey was charged with Inflicting Bodily Injury on Certain Officers (18 U.S.C. § 111(a)(1) and (b)); Civil Disorder (18 U.S.C. § 231(a)(3)); Entering and Remaining in a Restricted Building or Grounds, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, and Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1) and (a)(2) and (a)(4), and (b) (1) (A)); Disorderly Conduct on Capitol Grounds,

Impeding Passage Through the Capitol Grounds or Buildings, and an Act of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(F), (E), and (F)).

Mr. Ramey was arrested on April 22, 2022, in Plantation, Florida and the Government requested removal and pretrial detention. On April 27, 2022, Magistrate Judge Alicia O. Valle issued an order granting the Government's request for detention pending trial.

## ARGUMENT

Mr. Ramey requests the court to revoke his detention order issued by Magistrate Judge Valle from his initial arrest in Florida. "If a person is ordered detained by a magistrate judge…the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of that order." 18 U.S.C. § 3145 (b*); see also United States v. Hassanshahi*, 989 F. Supp.2d 110, 113 (D.D.C. 2013)("Authority to review the release order lies with the district judge."). The District Court reviews the magistrate judge's detention order de novo. *Id*.; *see also Klein*, 2021 WL 1377128, at *3 (Although the D.C. Circuit has not ruled on the matter, every circuit to consider the issue has found that a magistrate judge's detention order is subject to de novo review.").

This Court has previously allowed Defendants charged with charges similar to Mr. Ramey to be released pretrial and utilizing the "default favoring liberty" standard set out by this Court, Mr. Ramey should be released on conditions prior to trial. *United States v. Cua*, No. CR 21-107, 2012 WL 918255, at *8 (D.D.C. Mar. 10, 2021) (granting defendant's release to custody of parents in insurrection case involving, among other charges, assault with dangerous weapon.). Similarly, "[o]ur system of criminal justice embraces a strong presumption against detention." *Hassanshahi*, 989 F. Supp.2d at 113 (quoting *United States v. Hanson*, 613 F. Supp.2d 85, 87 (D.D.C. 2009)). This case goes on to state that "in our society liberty is the norm, and detention

prior to trial or without trial is the carefully limited exception." Id. (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

When faced with this precedent, Mr. Ramey should be released pending trial as his case does not fall within the limited exception favoring detention. In light of these cases, Mr. Ramey should be released given that he is not a risk to the community nor is he a flight risk. Given that Mr. Ramey has a stable living condition, employment waiting for him, and a network of support from friends and family members, there are conditions this Court can fashion that will ensure his appearance and the safety of the community.

> A. **The Government Cannot Prove by a Preponderance of the Evidence that Mr. Ramey Is a Serious Flight Risk**.

("[W]hen the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a "preponderance of the evidence." (Citation omitted)). While Magistrate Judge Valle did not consider risk of flight as one of her factors when considering detention, given Defendant's strong ties to the community, continued employment, and a strong network of support from friends and family, the Government cannot prove by a preponderance of the evidence that he would pose a flight risk.

Defendant has never travelled outside of the Country, does not own a valid passport, and has his entire life in Florida. Since the inception of this matter, Defendant has retained counsel in order to answer to these charges; not flee from them. His behavior and demeanor since he was notified of the investigation has been to be responsive and cooperative.

Mr. Ramey's elderly mother, for whom he is a caretaker resides a mile away from his home. He is solely responsible for her, her healthcare, and her above all managing her recent cancer diagnosis. Mr. Ramey's girlfriend and friends all are in Florida. His strong ties, his stable living environment, and employment all ensure that he is not a flight risk. These conditions

combined with GPS monitoring and strict supervision will ensure that he appears in court. Thus, detention based on flight risk is not required.

    B. **The Government Cannot Prove by Clear and Convincing Evidence That Mr. Ramey presents an identifiable and Articulable Threat to an Individual or Community**.

"To justify detention…[based on] dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person in the community." *United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021)(citations omitted); see also 18 U.S.C. § 3142(f). There are four factors the Court considers when deciding whether to detain based on dangerousness to the community. They are "(1) the nature and circumstances of the offense charged…;(2) the weight of the evidence against the person; (3) the history and characteristics of the person…;(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142 (g).

These factors must be weighed against the idea that liberty is still the norm. Mr. Ramey does not pose a threat to society or public safety.

    1. **The Nature and Circumstances of the Offense Charged**.

Mr. Ramey's charge stems from alleged activities during the January 6th protests on the Capitol. This was a unique set of circumstances that unfolded that are not likely to be replicated. From the evidence provided there is no indication that Mr. Ramey was a leader or had any authority role during his stay at the Capitol. In fact, unlike others, he did not even attempt to go inside the Capitol. At all times relevant, Mr. Ramey stayed outside and eventually left shortly after the breach of the Capitol.

Some of Mr. Ramey's more serious charges include assaulting a law enforcement

officer while at the Capitol. On the video provided by the Government, they claim that Mr. Ramey sprayed two officers with pepper spray. While a serious allegation, the video shows otherwise. He did not cause any property damage at the Capitol, he did not enter the Capitol, nor did he physically touch any officers. While a serious allegation, there are certainly conditions this Court can fashion to ensure that Mr. Ramey is not in a situation similar to the one leading to the charges.

2. **The Weight of the Evidence Against the Person**.

The weight of the evidence as to the charge of assault on law enforcement with a deadly weapon is stronger than the allegation that Mr. Ramey tried to intimidate a law enforcement knowing that they were acting in their capacity.

As to the assault on law enforcement charge, he is charged with two counts. However, the evidence provided by the Government can support only one of those charges, at best. Even the Magistrate Judge noted that the trajectory of the pepper spray along with the distance would be issues for a jury or fact finder to determine. While this allegation is serious, Mr. Ramey's behavior since the investigation shows remorse and a willingness to try to right his alleged wrong.

Even when there is "overwhelming evidence of guilt," it does not amount to "clear and convincing evidence that no conditions of release can reasonably assure the safety of the community." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018) (instructing court must "review the weight of the evidence against the defendant as an indicia of whether any conditions of pretrial will reasonably assure the safety of the community.").

### 3. The History and Characteristics of the Person.

The court must take into account the "person's character, physical and mental condition, family ties, employment, financial resources, length of residency int eh community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearing at court proceedings…" 18 U.S.C. § 3142 (g)(3)(A).

Mr. Ramey is a hard-working, family man who has no criminal history. He has strong ties to the community, as evidenced by letters attached in support. The letters are from people that know him best. They describe him as someone who is incredibly hardworking, supportive of those around him, and the nature of the charges are an aberration of who he embodies in their life. These are not letters of support from naïve relatives. These are sober-eyed friends and family members who are well-aware of the nature of his charges and are standing by to support him through this process.

While the allegations against Mr. Ramey are serious, they by themselves cannot be the only source of information about his character. Especially when the Court has released defendants charged with similar charges.

### 4. The Nature and Seriousness of the Danger to the Community.

Lastly, the Court must consider the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142 (4). The Court should look to see whether the Government has "proved by clear and convincing evidence that an arrestee presents an identifiable and articulable threat to an individual or community…" *Munchel*, 991 F.3d at 1280. Detention serves as a mechanism to "disable the arrestee from executing that threat." *Id*. (Quote omitted).

January 6th presented a unique set of circumstances that are highly impossible to replicate. The Court must consider the threat in context. *Id*. at 1283. Here, when viewed in the context of January 6th, the threat Mr. Ramey presents is acting in a similar manner as he allegedly did on January 6th. Those sets of circumstances are too hard to replicate and would not present a danger for Mr. Ramey ever again. Separately, his history prior to this incident is clean of any such actions. At the detention hearing, the Government brought up prior protective order hearings to insinuate that this is a pattern. However, it is noteworthy that those protective orders were dismissed by judges after a trial or hearing. To hold any lack of criminal behavior on Mr. Ramey's part against him is contradictory to the factors laid out by the Court.

Considering the lack of this type of criminal behavior in his past, it is important for the court to consider the probability of Mr. Ramey being in a similar situation again while he is released pending trial. It is appropriate for courts to consider whether that individual "will engage in the same kinds of inherently dangerous and illegal activities" at issue in the particular case. *United States v. Wiggins*, F. Supp.3d, 2020 WL 1868891, at *8 (D.D.C. Apr. 10, 2020) (holding defendant did not show by clear and convincing evidence that if he were released, he would not engage in the same kinds of dangerous activities); *see also United States v. Lee*, 451 F. Supp. 3d 1, 7-8 (D.D.C. 2020) (concluding the danger posed by the person's release is the "risk that he will continue to engage in the same types of unlawful and potentially dangerous conduct"). Again, putting Mr. Ramey on GPS monitoring as well as house arrest would alleviate this concern entirely.

Even when considering the nature and seriousness of the danger, he does not pose

a threat to the community at large, the community he has lived in since the age of five. Precedent in this Court requires that the court be "guided by the default rule favoring liberty." *Cua*, 2021 WL 918255, at *8.

C. **Mr. Ramey should not be held on Obstruction of Justice Grounds Because the Government Cannot Present Evidence That There is Serious Risk That He Will Obstruct or Attempt to Obstruct Justice**.

Lastly, Mr. Ramey should not be detained on grounds that he will seek to intimidate or obstruct a law enforcement officer or the proceedings. The Government has made allegations that Mr. Ramey tried to intimidate the case agent, Special Agent Ryan Nougaret. The Government alleges that on February 11, 2022, Special Agent Nougaret left his business card with a close associate of Mr. Ramey. On February 12, 2022, Special Agent Nougaret received a call from an attorney stating that Mr. Ramey was represented and to reach out to the attorney for any future contact. This fact is not in dispute. On April 8, 2022, Special Agent Nougaret claims that he received a call from unknown number inquiring about his address and vehicle.

Two months after Special Agent Nougaret left his card with Mr. Ramey, he claims Mr. Ramey called and messaged him to intimidate him. Special Agent Nougaret was unable to trace the number back to any known individual, especially not to Mr. Ramey. This along with the allegation that Mr. Ramey is charged with obstructing an official proceeding is the government's additional basis for asking for detention.

Relatedly, the court has held that "[t]here is not a per se rule that an obstruction of justice charge warrants detention." *United States v. Omar*, No. 3:10-CR-00260. 2011 WL 902487, at *15 (M.D. Tenn. Mar. 15, 2011) (citation omitted); *See also United States v. Demmler*, 523 F. Supp.2d 677, 683 (S.D. Ohio 2007) ("[T]he Court will not assume that

just because [defendant] has been charged with…obstruction of justice, he is likely to commit these same offenses again during the course of these proceedings. Indulging in such an assumption would be tantamount to creating a per se rule of detention in cases involving…obstruction[.]").

## CONCLUSION

For the reasons stated above, Defendant Barry Ramey, respectfully requests the Court to revoke the Magistrate Judge's order of detention and issue an order for pretrial release.

Respectfully submitted,

*/s/ Farheena Siddiqui*
Farheena Siddiqui
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant's Motion to Revoke Detention Order was served upon counsel of record through ECF on the date of filing.

/s/

Farheena Siddiqui