**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No. 22-CR-184 (DLF) |
| BARRY BENNET RAMEY, | : |
| *Defendant* | : |

**REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER AND FOR PRETRIAL RELEASE**

Defendant Barry Ramey, by and through counsel, respectfully requests that this Court revoke the Magistrate Judge's detention order from the Southern District of Florida and issue an order authorizing pretrial release with location monitoring and any other conditions deemed appropriate by the Court pursuant to 18 U.S.C. 3142 and 3245(b).

Mr. Ramey was present at the Capitol building on January 6th and allegedly engaged in conduct similar to hundreds of other protesters. While these allegations are serious, many protestors with the same charges as Mr. Ramey have been granted pretrial release by this Court.

Mr. Ramey is a family man with strong ties to the community and a stable home release plan who is ready to remain productive and actively help in his defense while he awaits trial. Mr. Ramey is not a danger to the community, and he can rebut the presumption of detention. GPS monitoring, along with other conditions of release that provide for strict supervision, will reasonably ensure Mr. Ramey's appearance at future court dates as well as safety of the community, as these conditions have for other defendants charged with similar conduct in this Court.

1

## BACKGROUND

On April 20, 2022, the Government filed an indictment and criminal complaint against Mr. Ramey charging with him several allegations related to the protests at the Capitol on January 6, 2021. Mr. Ramey was arrested on April 22, 2022, in Plantation, Florida and the Government requested removal and pretrial detention. On April 27, 2022, Magistrate Judge Alicia O. Valle issued an order granting the Government's request for detention pending trial.

## ARGUMENT

The Government does not meet its burden to prove that Mr. Ramey presents an identifiable and articulable threat to an individual or the community to justify pretrial detention. "To justify detention… [based on] dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person in the community." *United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021) (citations omitted); *see also* 18 U.S.C. § 3142(f). The Court considers four factors when deciding whether to detain based on dangerousness to the community: "(1) the nature and circumstances of the offense charges…; (2) the weight of the evidence against the person; (3) the history and characteristics of the person…; (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142 (g). The analysis of these factors does not support Mr. Ramey's detention.

    a. **Nature and Circumstances of the Offense**

The nature and circumstances of Mr. Ramey's conduct on January 6th do not weigh in favor of detention. In its memorandum to the Court, the Government argues that Mr. Ramey's conduct on January 6th is particularly dangerous compared to other protesters. The Government reasons that Mr. Ramey engaged in prior planning and assaulted an officer, causing the collapse

of a police line and the rioter's breach of the Capitol. The facts do not support these contentions and instead suggest that Mr. Ramey's conduct is similar to other protesters with the same charges; protesters that this Court has allowed pretrial release.

The Government's contention that Mr. Ramey arrived to the Capitol with prior planning, intending to cause harm is not supported by its own evidence. The Government points to three things to support its view: 1) that Mr. Ramey arrived wearing a stab-proof vest; 2) that Mr. Ramey wore a gas-mask; 3) that Mr. Ramey brought and used pepper spray.

The stab-proof vest is at best a defensive mechanism intending to prevent harm to Mr. Ramey. It cannot cause harm to anyone else. The Government does not contend that Mr. Ramey had any weapons such as a gun or a knife on him while he was present on the grounds. After speaking with Mr. Ramey's girlfriend who dropped him off at the protests that day, she can confirm that Mr. Ramey did not have the gas-mask with him when she dropped him off. Mr. Ramey found the gas-mask somewhere along the protests. Additionally, Mr. Ramey employs the use of the gas mask briefly. What the Government's evidence fails to mention is that tear gas and rubber bullets were deployed in the general area where Mr. Ramey stood that day. Videos from people covering the event show many others in similar gas masks using it defensively.[1] Mr. Ramey can then be seen removing the gas mask and during the alleged attack on law enforcement, is not using one.

Mr. Ramey's conduct can only be described as defensive not offensive. He was not in the front of the line or crowed, he was not pushing his way up to the front, he was not encouraging others to violence. In fact, when the line fell, Mr. Ramey could have used that opportunity to directly attack officers or enter the Capitol. He did neither. That action by itself

---

[1] Tayler Hansen (@TaylerUSA), Twitter (Feb. 13, 2022, 7:56 PM), https://mobile.twitter.com/TaylerUSA/status/1493026264713777157?s=20&t=Dl37aGrwpOctA_9hlZXj-g.

3

shows his intention. He was not there to cause harm nor was he intending to enter the Capitol. In fact, shortly after the Capitol was breached, he left. These are not the actions of an individual with a plan to violently breach the Capitol building.

The Government's contention that Mr. Ramey's alleged assault on an officer directly caused the breach of the Capitol building is equally unsupported by the facts. The Government does not provide evidence that Mr. Ramey's alleged discharge of pepper spray caused the collapse of the police line. It is speculative to assume that Mr. Ramey's discharge of pepper spray in an officer's general direction caused the incapacitation of the five other officers standing behind him allowing rioters to enter the building. *See* Government's Exhibit 5.

While assaulting an officer is a serious offense, Mr. Ramey is not alone in receiving this charge. When considering these cases, this Court has allowed pretrial release in at least 19 similar cases.[2] In one of these cases, a Defendant was charged with, among other things, assaulting an officer after violently pushing a law enforcement officer at the January 6th riot.[3] In that case, this Court granted pretrial release with stringent conditions.

Here, Mr. Ramey did not physically touch an officer. He did not fight on the front line, pushing law enforcement officers in an attempt to breach the building. Instead, he kept his distance, spraying pepper spray into the crowd. This act, while serious, was less violent than the conduct of many other defendants who physically attacked law enforcement officers; defendants whom this Court has allowed pretrial release.

---

[2] *USA v. Clayton Mullins*, 1:21-cr-35; *USA v. Aaron James*, 1:21-cr-605; *USA v. Isaac Westbury*, 1:21-cr-605; *USA v. David Blair,* 1:21-cr-186; *USA v. Robert Sanford*, 1:21-cr-86; *USA v. Grady Owens*, 1:21-cr-286; *USA v. Emanuel Jackson*, 1:21-cr-395; *USA v. David Judd*, 1:21-cr-40; *USA v. Federico Klein*, 1:21-cr-40; *USA v. Thomas Webster*, 1:21-cr-208; *USA v. Michael Brock*, 1:21-cr-500; *USA v. Matthew Council*, 1:21-mj-8; *USA v. Joseph Foy*, 1:21-cr-108; *USA v. Joshua Lollar*, 1:21-cr-152; *USA v. Edward McCaugney*, 1:21-cr-40; *USA v. Steven Cappuccio*, 1:21-cr-40; *USA v. Bruno Joseph Cua*, 1:21-cr-107; *USA v. Stephen Chase Randolph*, 1:21-cr-332*; USA v. Christopher Warnagiris*, 1:21-cr-382.
[3] *USA v. Matthew Council*, 1:21-mj-8.

### b. The Weight of the Evidence Against the Person

The Government overstates the significance of evidence against Mr. Ramey. The Government contends that the evidence against Mr. Ramey is "overwhelming" and that "Ramey's assaults are captured on video from multiple angles." While it is true that video footage shows Mr. Ramey present at the capitol building, the videos from different angles are not as dispositive as to the alleged assault. In the video footage, the trajectory of the pepper spray and whether it came in contact with a law enforcement officer is unclear and would be an issue for a jury or fact finder to determine.

### c. History and Characteristics of Mr. Ramey

` Mr. Ramey's history and characteristics do not weigh in favor of detention. The Government points to a prior assault charge that was not pursued by prosecution and alleged threats made to Agent Nougaret to contend that Mr. Ramey is a threat to public safety. The reports provided by the prosecution from the prior charge are indicative of an irate customer. There were never any threats made of physical harm nor was any physical assault ever carried out.

The Government next argues that Mr. Ramey's contact with Agent Nougaret suggests a pattern of harassment and intimidation. However, the facts, even based on the Government's proffer are suspect. According to the Government's response, Agent Nougaret reached out to Mr. Ramey's girlfriend in an effort to speak with Mr. Ramey. The next day, Mr. Ramey's attorney reached out to the agent letting him know he was represented and to direct any further communication to him. Months later, Agent Nougaret reaches out to Mr. Ramey at his work, asking to speak with him. Defense Counsel spoke with coworkers of Mr. Ramey and was informed that the caller asked to speak to Mr. Ramey and did not identify himself as an FBI

agent. At the time, Mr. Ramey and his coworker did not know that they were speaking with or being contacted by an agent. After the specific instructions of prior counsel on behalf of Mr. Ramey, he would have no reason to believe that an FBI agent would continue to contact him, despite knowing that he is represented by counsel.

### d. Nature and Seriousness of Danger to the Community

The circumstances leading to and occurring on January 6th are highly impossible to replicate making it unlikely that he will engage in similar illegal activity. "The D.C. Circuit has indicated that merely showing the danger a person posed to others or the community, or even our democratic institutions, on January 6 is not enough to justify pretrial detention but, now that 'the specific circumstances of January 6 have passed,' … the task is to determine whether the defendant 'pose[s] a threat of committing violence in the future.'"[4] Given Mr. Ramey's nonexistent criminal history, we do not think he poses any risk of future violence.

The Government contends that Mr. Ramey is generally dangerous because he has been charged with assaulting an officer. While this is a serious charge, the charge alone does not constitute a specific threat to society requiring detention. In various January 6th cases involving the same charges, this Court has agreed and granted pretrial release. To mitigate any concern of dangerousness to the community, the Court in these cases has required various conditions of release including GPS monitoring, house arrest, and mental health treatment.

The Government further contends that Mr. Ramey's actions on January 6th display a general disregard for the rule of law making it unlikely that he will comply with the conditions of release. This is not the case. Mr. Ramey has family, friends, and other ties to the community. He and his family have felt the effects of these charges, and he is determined to take

---

[4] *USA v. Grady Douglas Owens*, 1:21-cr-286.

responsibility for his actions and lead a successful law-abiding life. Upon release, he has every intention to follow the rules and guidelines required by this Court.

Outside of his alleged conduct related to January 6th, Mr. Ramey has no criminal history. He is a hardworking, family man with strong ties to the community. Prior to these charges, he had a stable job to provide for himself and his family. While the charges against Mr. Ramey are serious, they cannot be the only source of information when considering his history and character.

Lastly, Mr. Ramey has a stable home release plan that will allow him to remain productive and actively help in his defense while he awaits trial. Upon release, Mr. Ramey will live with his fiancée, Desiree Rowland, at 471 NW 68th Ave., Plantation, Florida 33317.

## CONCLUSION

For the reasons stated above, Defendant Barry Ramey, respectfully requests the Court revoke the Magistrate Judge's order of detention and issue an order for pretrial release

Respectfully submitted,

/s/ *Farheena Siddiqui*
Farheena Siddiqui
District of Columbia Bar No. 888325080
Law Office Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: fsiddiqui@scmoorelaw.com
Phone: 703-535-7809
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant's Reply to the Government's Opposition to Defendant's Motion to Revoke Detention Order was served upon counsel of record through ECF

on the date of filing.

s/ *Farheena Siddiqui*  
Farheena Siddiqui