UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-CR-184 (DLF) |
| v. : | |
| : | |
| BARRY BENNET RAMEY : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S SUR-REPLY TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER AND FOR PRETRIAL RELEASE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this sur-reply to Defendant Barry Bennet Ramey's reply regarding his Motion to Revoke the Detention Order and for Pretrial Release. (ECF No. 16, 19.) The government has obtained additional information that bears on the Court's decision on Ramey's motion for pretrial release, and states as follows:

The government conducted additional investigation into Ramey's housing situation due to its relevance to the instant motion. On July 18, 2022, the case agent met with and interviewed the owner of the apartment in which Ramey had been living with his mother, as well as the owner's brother and son. The owner and the owner's brother reported that Ramey's mother and sister leased the apartment in or around March 2016. Barry Ramey was not on the lease, but he was frequently present at the apartment and appeared to fully move in with his mother after his sister vacated the apartment.[1] The owner informed the Rameys that the lease would not be renewed in June 2021 because the owner wanted to renovate the apartment and move back in. The Rameys were asked to and did vacate the apartment in June 2021. Also in June 2021, Barry Ramey

---

[1] The government does not have information about when this move occurred.

1

obtained a storage locker at a Public Storage facility which he leased and visited through the date of his arrest in April 2022.

The owner and the owner's brother, who helped manage the property, also reported deeply concerning interactions with Barry Ramey that are consistent with reports referenced in the government's opposition to Ramey's motion for release.  (*See* Gov't Opp., ECF No. 17 at 9.)  The brothers reported that, whenever they encountered Ramey, he was carrying a pistol, and that he was unpleasant, scary, aggressive, and threatening.  On one occasion, when the brothers went to the apartment to install shutters, they encountered Ramey, who angrily accused them of not calling before showing up.  Ramey then watched the brothers install the shutters while he cleaned his gun.  The brothers recall Ramey making a veiled threat to the effect of, "next time you better call first … or else."  On a separate occasion, the owner visited the apartment to repair the air conditioning unit and reported that Ramey angrily approached the owner with the gun in his hand.

When the Rameys were provided notice that the lease would not be renewed because the owner's family intended to move back in, Ramey became irate and threatened to "kick [the brother's] ass."  Ramey called the brother repeatedly on the phone and cursed him out.  After the Rameys vacated the apartment, the owner discovered significant damage, including large, "fist-sized" holes in the walls.  For this reason, the owner only returned half of the Rameys' security deposit.  The owner's brother told the case agent that they should have withheld the entire deposit, but they were afraid of what Ramey might do if they did that.  The brothers reported that they considered but never contacted the police about their interactions with Ramey.  They reported that Ramey's mother was a good tenant and a nice lady, so they just tried to avoid seeing Ramey as much as possible.

Ramey's claim in his reply that he never made threats of physical violence or carried out physical assault (*see* ECF No. 19 at 5) is truly baffling in light of the information that the Court already has.[2]  In its opposition, the government chose not to raise a 2009 incident, due to the age of the allegation, but it is perhaps the most concerning of the reports against Ramey.  In a statement to police, a person familiar with Ramey reported that Ramey confronted her at a gas station, threw a rock at her car, then approached the car while she was still in it and began to kick the driver and passenger side doors.  When the victim got out of the car, Ramey attacked her—she reported that he grabbed her left hand and wrist, twisted her wrist, backhanded her, then pushed her to the ground.[3]

The government does not attempt to assert that these reports contain proven criminal conduct.  Individually, each report would be concerning, but insufficient to establish dangerousness by clear and convincing evidence.  Together, across time, these reports show Ramey's propensity for violence, threats of violence, and intimidation.  The government is now aware of at least nine instances[4] of violent threats and violent conduct reported by six seemingly disconnected individuals.  This count does not include Ramey's effort to intimidate Agent Nougaret, which itself presents a serious risk that, if released, Ramey will obstruct or attempt to

---

[2]  The government's representations in its opposition included information that Ramey threatened to "break [the petitioner's] face and Ramey's own admission that he "punched an Antifa guy in the face."  (ECF No. 17 at 9.)

[3]  This case proceeded to a jury trial but was dismissed nolle prosequi because the victim did not appear.

[4]  The government can only estimate because some of the petitioners reported multiple interactions with Ramey and described them collectively, e.g., one petitioner reported that Ramey "continues to call + text, making threats of violence towards myself and my family" and "He is trained in several martial arts + owns several guns."  It is also unlikely that these documented incidents capture the universe of Ramey's violent and threatening interactions with others.

obstruct justice. *See* 18 U.S.C. § 3142(f)(2)(B) (providing grounds for the government to move for detention in cases involving a serious risk of obstruction of justice).

For these and the reasons stated in the government's opposition (ECF No. 17), the government requests that this Court deny Ramey's Motion to Revoke the Detention Order and for Pretrial Release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Kathryn E. Fifield*
Kathryn E. Fifield
Trial Attorney
U.S. Department of Justice, Criminal Division
Detailed to the D.C. United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 320-0048
Kathryn.fifield@usdoj.gov