IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 1:22-cr-184-DLF |
| v. | : | |
| BARRY BENNET RAMEY, | : | |
| Defendant. | : | |

**UNITED STATES'S RESPONSE TO THE DEFENDANT'S POST-TRIAL BRIEF**

The United States, by and through its attorneys, respectfully submits this response to the "Defendant's Post-Trial Briefing." (ECF No. 43). Ramey's arguments are without legal or factual merit. The evidence establishes that Ramey is guilty beyond a reasonable doubt.

I.      **THE GOVERNMENT PROVED RAMEY USED PEPPER SPRAY.**

Evidence at trial proves beyond a reasonable doubt that Ramey carried pepper spray and used it against Officers David Riggleman and Bryant Williams. Ramey can be seen holding the canister on video (Ex. 200), still frames show the canister (Ex. 200D), and both officers testified that the substance they were sprayed with was consistent with the pepper spray they were sprayed with in training. (Trial Tr. 131, 176). The effects described by the officers demonstrate that they were sprayed with pepper spray. Pepper spray is a generic term used to described "a temporarily disabling aerosol that is composed partly of capsicum oleoresin[1] and causes irritation and blinding of the eyes and inflammation of the nose, throat, and skin." *Pepper Spray,* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/pepper%20spray (last visited February 28, 2023). Multiple video exhibits showed Ramey's spray was an aerosol. The officers testified that it

---

[1]      Oleoresin capsicum is the "OC" in OC Spray.

temporarily disabled them and caused issues with their vision, noses, and breathing.  (Trial Tr. 132-33, 171-72).  Ramey's spray looked like, acted like, and felt like pepper spray.

Beyond a conclusory statement, citing no evidence, case law, or the jury instructions (ECF No. 43 at 3), Ramey makes no argument that the government failed to prove that the substance used by Ramey was pepper spray.  Instead, he abstractly suggests some failure in the government's proof relative to the Indictment.  This argument is nonsensical, first, because the government said via the Indictment that it would offer proof that the substance was pepper spray, and the government did that at trial.  Second, the law is clear that the government's burden is not increased because it provided Ramey notice in the Indictment of what it believed the evidence would show.[2] The government's proof was not an expansion of the Indictment, a variance, or an amendment. The government's evidence showed that terms such as "pepper spray" and "OC spray," which are chemical irritants, are synonymous, generic, and accurately describe the object Ramey used to assault two police officers.  There is no evidence to the contrary.

## II. PEPPER SPRAY IS A DEADLY OR DANGEROUS WEAPON.

Pepper spray is a dangerous weapon.  A deadly or dangerous weapon is defined as an object "capable of causing serious bodily injury or death to another person," where the defendant uses the object "in that manner."  (ECF No. 28 at 7); *see also United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002).  The parties agree that serious bodily injury includes a substantial risk of

---

[2]     The government relies on its argument in its post-trial brief regarding the difference between pleading requirements and proof at trial. (ECF No. 45 at 19-21.)  Additional caselaw from other jurisdictions, however, underscores the point. *See United States v. Deverso*, 518 F.3d 1250, 1258 n.2 (11th Cir. 2008) ("Congress defines the elements of an offense, not the charging document."); *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994) ("Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime.").

death, extreme physical pain, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. (*See* ECF No. 43 at 9.) Pepper spray meets this definition.

Evidence at trial showed pepper spray is capable of being lethal. It can cause nasal issues, breathing issues requiring medical attention, asthma or allergic attacks, burning sensations, and feeling like one's skin is on fire. It can impair someone's vision or cause damage to the retinas, and it can incapacitate. (Trial Tr. 23, 52, 56-58, 132-33, 171-72). These symptoms include extreme physical pain or protracted loss or impairment of the function of a bodily member or organ. Although the government is not required to prove that the defendant's use of the weapon caused actual injuries, Ramey's use of pepper spray caused permanent and temporary vision impairment, breathing issues, incapacitated two officers, and was capable of much worse. (Trial Tr. 132-33, 171-72.)

Ramey does not challenge the government's proof. Instead, he makes several arguments that are unsupported by the trial evidence and the law.[3] Ramey suggests that, because police officers are exposed in training to pepper spray, it cannot be dangerous. This argument flatly ignores the witnesses' testimony that pepper spray can cause serious injury or be lethal. It also ignores the testimony from the witnesses describing the safeguards present when they were exposed to pepper spray in training. They were exposed briefly, allowed to decontaminate approximately 90 seconds later, and emergency medical providers were on standby. (Trial Tr. 23, 45, 50, 53, and 58; 117-18, 164). Even in this controlled environment, Officer Williams and SA Nougaret separately testified about members of their class that collapsed and required emergency medical attention. (Trial Tr. 58, 117-18). These safeguards demonstrate that pepper spray is *dangerous*, not safe.

---

[3] Conspicuously, Ramey does not cite a single case finding that pepper spray was not a dangerous weapon.

3

Finally, Ramey misunderstands the meaning behind "the manner in which the object was used." Ramey used pepper spray as it was designed to be used, by spraying it. Testimony in trial and the discussion above shows that pepper spray, when used as intended, is capable of causing serious bodily harm or death. Pepper spray, in the manner that Ramey used it, is capable of causing death or serious bodily injury and therefore it is a deadly or dangerous weapon.[4]

### III. RAMEY SPRAYED OFFICER WILLIAMS, WHICH IS AN ASSAULT WHETHER RAMEY HIT OFFICER WILLIAMS OR NOT.

As addressed at length in the government's prior brief, Ramey's argument on this point fails factually and legally. Factually, Ramey's spray hit Officer Williams. Ramey is on video pointing his pepper spray toward Officer Williams, the spray can be seen traveling toward Officer Williams, and Officer Williams's testimony confirms Ramey's spray hit him. Ramey's

---

[4] Ramey makes several other factual arguments that egregiously misstate the evidence. Ramey refers to "Metropolitan Police Department witnesses" (ECF No. 43 at 10) when no Metropolitan Police officers testified in this trial. Ramey states that "the witnesses discussed that they are trained and authorized to use pepper spray on *slight uncooperative* subjects," (*Id.* at 10-11 (emphasis added) when no witnesses discussed the use of pepper spray against uncooperative subjects, let alone "slight[ly]" uncooperative ones.

Ramey states that Captain Mendoza testified about "hydraulic needling," and that hydraulic needling is "an issue with the larger cannisters of pepper spray, or if a subject is sprayed directly in the eye from a short distance." (ECF No. 43 at 11.) Captain Mendoza never testified about needling, nor whether needling is "an issue" with larger versus smaller cannisters or how directly one is sprayed. Ramey then states that "[n]o other dangers of peppers [sic] spray were [sic] elicited." (*Id.*) This is false. Captain Mendoza discussed how short bursts were necessary to "maintain that level of less lethal" and how depending on how you incapacitate someone, how that could be more dangerous. (Trial Tr. at 49).

Ramey states that Officer Riggleman "was able to flush out his eyes immediately," Officer Williams "was able to go back to the line after feeling something in his eyes" (ECF No. 43 at 11), both officers were able to decontaminate after being sprayed (*Id.* at 13), and that "all [witnesses] testified that they did not have adverse or lasting impact [sic] on their health as a result of the pepper spray" (*Id.* at 10). Neither officer was able to decontaminate immediately, Officer Williams didn't have an opportunity to decontaminate until several hours later, and Officer Williams's vision was impaired for the rest of the day and continues to be impaired. (Trial Tr. 131-33, 173-75). Ramey also incorrectly states that "[b]oth officers testified that they would estimate that Mr. Ramey was 6-10 feet away," (ECF No. 43 at 11), when Officer Williams was shown Ex. 200, he testified that he thought Ramey was three to four feet away. (Trial Tr. 149).

unpersuasive analysis[5] of one exhibit is contradicted by the whole of the evidence. (*See* ECF No. 45 at 28-32.)

Legally, Ramey's argument fails because assault does not require physical contact or touching. (*See* ECF No. 45 at 23-24.) Assault without physical contact violates Section 111(b) when it involves the use of a deadly or dangerous weapon and it is felonious assault under 111(a)(1) when coupled with the intent to commit another felony. Moreover, resisting, opposing, impeding, intimidating, or interfering with an officer of the United States all support a violation Section 111(a)(1) or (b).

## CONCLUSION

The government has proved every element of every charge against the defendant, Barry Ramey, beyond a reasonable doubt. For these reasons and those stated in its earlier brief, the government asks the Court to return verdicts of guilty on all counts.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    /s/
Kathryn E. Fifield
Brian D. Brady
Trial Attorneys
U.S. Department of Justice, Crim. Div.
Detailed to the D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C. 20530
Kathryn.fifield@usdoj.gov
(202) 320-0048

---

[5] Several aspects of Ramey's analysis of Exhibit 200 are problematic, but one bears emphasis. Ramey's claim that Officer Williams is "impacted by *both* the flag and the spray [OR1]" at approximately 00:28-00:29 seconds (ECF No. 43 at 17) is not borne out by Exhibit 200 itself, Exhibit 211, and is contradicted by Officer Williams's testimony. (Trial Tr. at 130-31).