**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        :
UNITED STATES OF AMERICA                :
                                        :
         v.                             :         Case No. 22-CR-184 (DLF)
                              :
BARRY BENNET RAMEY,                     :
                                        :
                _Defendant._            :
_____:

**DEFENDANT'S RESPONSE TO**
**GOVERNMENT'S POST-TRIAL BRIEFING**

COMES NOW the Defendant, Barry Ramey, by and through counsel, and respectfully submits his response to the Government's post-trial brief.

**I.      Pepper Spray Is Not a Deadly or Dangerous Weapon.**

The decision of whether an object is a deadly or dangerous weapon, is a factual issue for the trier of facts. It is fact dependent not just on what the alleged weapon is but its usage and whether defendant used it in such a manner as to make it deadly or dangerous. The Government cannot sustain this burden beyond a reasonable doubt upon the facts of this case.

The Government cites to pleas accepted in previous January 6th cases. These pleas are irrelevant to this issue as the nature of the plea would dictate that the Court did not need to make that finding as it was an accepted part of the plea. Findings made at a detention hearing stage are also not relevant as the burden is much higher on the Government to prove the facts it alleges at a trial. The Government then cites to cases that involve mace and other objects such as a shoe or a rake. This too is irrelevant as there is no testimony that mace is similar to or creates the same issues as pepper spray or

that other objects were used here to cause the alleged assault.

All four of the Government witnesses testified that they were sprayed in the eyes during their training. That part of training is to be exposed to OC spray, sprayed across the face, so that it gets in your eyes. You are then exposed to it and taught to fight through it. Officer Williams says you have to be at least 3 feet away from the person you're spraying. (Trial Tr. 40). He mentions risks of OC spray as needling. If you are sprayed too close to the eyes and it can cause damage to your retina. He further clarifies that it is not just about how close the spray is but also the pressure of the spray in your eye. He added that the distance they use in training, it does not cause needling. (Trial Tr. 41). He further goes on to add that the person identified in the video is not closer than the safe distance used in training.

## II.    The Government Was Required to Prove That the Weapon Was Pepper Spray.

The Government was required to prove that the weapon was pepper spray as per the indictment. As per the stipulation reached during Agent Nougaret's testimony, in his report, taken closer to the incident occurring than trial, both Officers fail to identify the substance they felt on January 6th. Both officer's labeled it as an unknown substance. This is in line with both Officers testimony at trial. Officer Riggleman testified that he did not ask nor did he know what he was sprayed with. Officer Williams testified and then clarified upon further questions by the Court, that bear spray causes the same effects and looks the same as the spray he witnessed in the video.

At trial, the Government continued to use OC spray and pepper spray interchangeably when questioning each of its witnesses

Officer Williams and Riggleman testified as the named victims in this case. The Government asked Officer Williams first if he is familiar with OC or Pepper Spray through his training (Trial Tr. 5). Officer Williams then testifies that it can cause "needling" if used in an "illegal way." (Trial tr. 7). The Government then asks Officer Williams whether he perceived that he had been hit with "some kind of substance." (Trial Tr. 22). During redirect, Officer Williams was asked by this Court about bear spray versus OC spray. Officer Williams testified that OC spray and bear spray are all the same color. (Trial Tr. 46). There was no further testimony elicited whether the spray he experienced was different than bear spray in any means or why Officer Williams would know the difference between what the spray was. Further, there was no testimony as to the safety procedures for any other type of chemical irritant or what potential harm they may cause.

Officer Riggleman was asked by the Government if he has experience with OC spray. (Trial tr. 54). During direct examination, Officer Riggleman testified that he did not ask what he was sprayed with. During cross examination, he testified that without knowing what was in the cannister, it is difficult to say what the spray was. (Trial tr. 72). He further testified that all irritants would have the same sensation as the one he felt on January 6th. (Trial Tr. 72).

Lastly, the Government charged Mr. Ramey and indicted him on a specific alleged weapon. For the indictment to be sufficient on its face, it would need to allege which weapon the Government accused Mr. Ramey of using. Broadening the scope of the weapon is against the case law cited by Defendant in its post-trial brief. The Government did not just allege a variance when it tried to broaden the scope from pepper spray to any

chemical irritant, it constructively amended the indictment. There is no proof to suggest that the grand jury would have indictment the Defendant on all chemical irritants, not specifically pepper spray. Further, there is no proof that the grand jury saw before it evidence that any chemical irritant is a deadly or dangerous weapon.

### III.    Element 5 of The Assault Charge Creates Blockburger Issues.

The fifth element of the Assault charge requires the government to prove that the defendant made physical contact with an officer of the United States or acted with the intent to commit another felony. If the Government is proceeding under the theory that Mr. Ramey should be found guilty of the enhanced assault charge because he committed this assault charge with the intent to commit another felony, the Government creates a Blockburger issue. The *Blockburge*r test requires the Court to evaluate the elements of each statute element to determine whether each requires proof of an element which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). If not, then double jeopardy bars prosecution on the same alleged conduct.

The Government points to several of the other felonies that Mr. Ramey was indicted on including Count 1, 4, 5, and 6. Specifically, Counts 1 and 6 would not stand under the *Blockburger* test. The elements of Count 1 and 6 are entirely subsumed by Count 2 and 3 as they would both require the Government to prove the "other felony." The relevant conduct here is the same—the sprays by Mr. Ramey. The assault charge would have required the Government to prove the intent to commit another felony. If the other felony is civil disorder, the Government would have to prove the civil disorder (and all of its elements) to prove the assault charge under the theory that it was committed with the intent to commit another felony (civil disorder). If the other felony is Count 6,

the Government would have had to prove physical violence (the alleged assaults on the named officers) as part of the assault on law enforcement charge. There is no allegation of any other physical violence by Mr. Ramey aside from the alleged assault on law enforcement. Because the underlying conduct is the same (the alleged sprays), if the Government proceeds under the theory that Mr. Ramey assaulted law enforcement officers with the intent to commit another felony, they create *Blockburger* issues that cannot sustain a conviction on both the assault charges and Counts 1 and 6.

## CONCLUSION

Because the Government should not be permitted to constructively amend the Indictment, the Government failed to prove the use of pepper spray and a deadly or dangerous weapon, and the Government failed to prove that Mr. Ramey assaulted Officer Williams, Mr. Ramey respectfully requests that the Court find him not guilty accordingly.

Respectfully submitted,

/s/ Farheena Siddiqui
Farheena Siddiqui
District of Columbia Bar No. 888325080
Law Office Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: fsiddiqui@scmoorelaw.com
Phone: 703-535-7809
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant's Post-Trial Briefing was filed and served upon counsel of record through ECF on the date of filing.

/s/ Farheena Siddiqui
Farheena Siddiqui