UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 22-cr-184 (DLF) |
| BARRY BENNET RAMEY | |
| Defendant. | |

**GOVERNMENT'S RESPONE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant Barry Ramey's sentencing memorandum. (ECF No. 59.)

**I.     Enhancements for the use of a Dangerous Weapon and Bodily Injury Apply**

The trial record and additional evidence presented to the Court ahead of sentencing amply support the application of a four-level enhancement under the Sentencing Guidelines for the use of a dangerous weapon.  *See* U.S.S.G. §2A2.2(b)(2)(B).[1]  The volume of evidence before this Court at sentencing distinguishes this case from *United States v. Perez*, 591 F. App'x 525 (11th Cir. 2013), where the government relied primarily "the brand name of the pepper spray, the label on the canister, which warns that its contents are "dangerous," and the video that allegedly depicts how Perez intended to use the pepper spray."  *Id.* at 528 (11th Cir. 2013).  None of these provided sufficient evidence of the spray's effects—the warning label was self-serving and too vague; a video showing how defendant intended to use the spray also did not show that pepper spray could

---

[1]     In resolving disputed factors at sentencing, the Court "may consider any relevant information … provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. §6A1.3.  The Federal Rules of Evidence do not apply.  *Id.*  The Court may apply a disputed sentencing enhancement if it finds that the enhancement is supported by a preponderance of the evidence.  U.S.S.G. §6A1.3 cmt.

cause particular effects. *Id.* Here, the government has provided numerous accounts of the effects of pepper spray as well as expert testimony regarding its effects, avoiding the problems identified in *Perez*. On this record, this case is more comparable to *United States v. Dukovich*, 11 F.3d 140 (11th Cir.1994); cert. denied, 511 U.S. 1111, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994), cited by the *Perez* court in contrast, wherein the government introduced evidence that "tear gas can cause eye damage, vomiting, loss of breath or a rash" and presented police officer testimony as to the physiological harm tear gas can cause. *Perez*, 591 F. App'x at 528 n.2 (quoting *Dukovich*, 11 F.3d at 142).[2]

Likewise, both officer victims sustained bodily injury as a result of being sprayed in the face by Ramey, supporting a three-level enhancement for bodily injury. U.S.S.G. §2A2.2(b)(3)(B). " 'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. §1B1.1 cmt. n. 1(B). Courts across the country have found that a wide variety of injuries constitute "bodily injury" under the Guidelines, including bruising and associated pain. (*See* App'x A, attached to this filing.)[3]

Here, both officers' injuries were "painful and obvious." Officer Riggleman doubled over

---

[2] The additional evidence provided to the Court at sentencing contextualizes other serious injuries that government witnesses testified about at trial. Specifically focusing on injuries to police cadets during training, government witnesses testified about cadets collapsing and requiring emergency medical care. (Trial Tr. 57-58, 118.) Additional evidence of police cadets sustaining serious bodily injury after being exposed to OC is cited in the government's sentencing memorandum. (ECF No. 60 at 14-15.) Consistent with the expert's testimony in *Worrell*, these injuries and effects are caused by *exposure* to OC, not merely the physical force with which the liquid hits the officers.

[3] And, in other contexts, bodily injury has been defined to include a cut, abrasion, bruise, burn or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary. *See* Fifth Circuit Model Jury Instruction No. 2.07; Tenth Circuit Model Jury Instruction No. 2.09; 18 U.S.C. § 1365(g)(4).

2

immediately after being hit by Ramey's spray, was incapable of opening his eyes, had to be escorted to a bathroom, and only regained his sight after flushing out his eyes for five to ten minutes. (Trial Tr. 174-75; Tr. Ex. 200.) Officer Williams similarly doubled back and testified that Ramey's spray felt like "fire on [his] face." (Trial Tr. 131; Tr. Ex. 200.) Consistent with his professional training, Officer Riggleman engaged in self-treatment of his injury (flushing out his eyes) whereas a lay person would likely require medical assistance under the same circumstances. Officer Williams *did* seek medical treatment for damage to his eyes as a result of Ramey's spray and has ongoing vision problems which require correction. (Trial Tr. 133, 134.)[4]

## II. This Defendant is not Entitled to a Downward Adjustment for Acceptance of Responsibility.

The defendant's request for a downward a downward adjustment for acceptance of responsibility (*see* Def. Sentencing Mem., EFC No. 59 at 14-16) should be denied for two reasons. First this defendant has not "clearly demonstrate[d] acceptance of responsibility" for the conduct underlying his offenses of conviction. U.S.S.G. §3E1.1(a). This defendant has shown no sincere remorse for his actions at the Capitol on January 6. He has never apologized for attacking two police officers and has never acknowledged his part in advancing the riot by breaking one of the last police lines standing between the mob and the interior of the Capitol building. This defendant has done the opposite, even after being convicted at trial. (*See* App'x B, attached to this filing.)[5]

---

[4] The Court should consider Officer Williams's testimony that he collapsed and suffered lasting vision problems among the evidence supporting both enhancements—dangerous weapon and bodily injury. As Williams explained, he was not instantly affected by the spray because it took some time for the spray to penetrate his helmet and run down his face. When it did, he collapsed behind the line, an effect that is borne out by the government's video exhibits at trial. His account is more than sufficient to meet the preponderance standard that now applies.

[5] For this reason, the defendant's arguments regarding plea negotiations are unavailing. Ramey's pretrial tactics, expressed through his attorney, do not reflect true acceptance of responsibility. In *United States v. Dozier*, 162 F.3d 120, 126-29 (D.C. Cir. 1998), the D.C. Circuit affirmed the denial of acceptance of responsibility (AOR) credit in a case where the defendant

Second, and contrary to the defendant's representations in his sentencing memorandum, the defendant did "put[] the government to its burden of proof at trial."[6] The defendant cross-examined every government witness. The defendant contested his factual guilt by challenging the government's proof on multiple elements of the charged offenses. For example, having received an indication pre-trial that the defense planned to challenge the defendant's knowledge that the Capitol grounds were restricted on January 6, the government placed an emphasis on the presence of barriers and other indications that the grounds were not open to the public in its presentation of evidence at the trial. When the Court asked, "[I]s the defense's position that he didn't know he was in restricted grounds? Is this at issue?", defense counsel responded, "Yes, I guess in some way." (Trial Tr. at 67.) Whereas defense counsel had cross-examined Captain Mendoza regarding the presence of barriers prior to the Court's inquiry (*id*. at 42-43), the defense appeared to abandon this strategy after the Court made clear that it was not receptive to such an argument.

Further, the government solicited a stipulation from the defendant pretrial that the civil

---

offered to plead guilty to charges of which he was ultimately convicted but not to charges of which he was acquitted, offers that were twice rejected by the government. *Id.* at 127. In addition to rejecting the argument that the government "forced" the defendant to go to trial, the Court held that the defendant's "quest" for AOR credit "falter[s]" because his pre- and post-trial conduct reflected strategic concerns rather than true acceptance of responsibility. *Id.*; *id*. at 128 (specifically noting defendant's failure to express contrition to the PSR writer); *see also United States v. Gauthier*, 53 F.4th 674, 677-78 (1st Cir. 2022) (Where plea offers are a tactical "pre-trial calculation," it is "strong evidence militating against acceptance of responsibility."); *United States v. Collins*, 511 F.3d 1276, 1280 (10th Cir. 2008) (affirming denial of AOR credit where defendant's offers to plead guilty "were strategic, rather than evidence of true acceptance of responsibility"); *United States v. Ervasti*, 201 F.3d 1029, 1043-44 (8th Cir. 2000) ("A defendant's willingness to plead guilty may be motivated by myriad factors, and may not necessarily be attended by the defendant's clear acceptance of guilt.").

[6]   *See* U.S.S.G. § 3E1.1 cmt. n.2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.")

disorder affected interstate commerce, an element of an offense under 18 U.S.C. § 231(a)(3). The defense declined the government's invitation to stipulate, stating via email that "[i]t is a direct element of a charge that you have to prove." At trial, the defendant objected to the exhibits offered by the government to prove the civil disorder's effect on interstate commerce, leading to a lengthy discussion after which the Court denied the defendant's objections. (*See* Trial Tr. at 6, 9-21, 96-102.) While it is the defendant's right to put the government to its burden, it is not then appropriate to request a downward adjustment for acceptance of responsibility.

**III.     The Defendant Attempted to Obstruct this Investigation.**

The defendant's claim that he did not know that he was harassing a federal law enforcement agent is not credible in light of the totality of the facts. As Special Agent Nougaret will testify at sentencing, Ramey could not have known *both* SA Nougaret's name and FBI cell phone number without having obtained them from SA Nougaret's FBI business card. SA Nougaret did not identify himself by name when he called Ramey's workplace in April 2022.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     /s/
Kathryn E. Fifield
Brian D. Brady
Trial Attorneys
U.S. Department of Justice, Crim. Div.
Detailed to the D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C. 20530
Kathryn.fifield@usdoj.gov
(202) 320-0048